# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| MATTHEW W. FILBRUN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:16-cv-02574-TWP-MJD |
| | ) |
| NANCY A. BERRYHILL,[1] Acting Commissioner | ) |
| of the Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Matthew W. Filbrun ("Filbrun") requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying his applications for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), and Supplemental Security Income ("SSI") under Title XVI of the Act.[2] For the following reasons, the Court **AFFIRMS** the decision of the Commissioner.

## I.     BACKGROUND

### A.     Procedural History

On November 6, 2013, Filbrun filed applications for DIB and SSI, alleging a disability onset date of October 23, 2009, due to short term memory problems, reoccurring cancer, thyroid cancer, and general affective disorders. Filbrun's claim was initially denied on January 16, 2014,

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Commissioner Carolyn W. Colvin as the defendant in this suit.

[2] In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits or Supplemental Security Income. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted decisions.

and again on reconsideration on April 2, 2014.  On April 3, 2014, Filbrun filed a written request for a hearing.

A hearing was held before Administrative Law Judge Daniel J. Mages (the "ALJ") on August 26, 2015.  Filbrun was present and represented by counsel, J. Frank Hanley, II.  Dewey Franklin, an impartial vocational expert (the "VE"), appeared and testified at the hearing.  On September 24, 2015, the ALJ denied Filbrun's applications for DBI and SSI.  Following the ALJ's decision, on October, 7, 2015, Filbrun requested review by the Appeals Council.  On July 25, 2016, the Appeals Council denied Filbrun's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.  On September 28, 2016, Filbrun filed this action for judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## B.    Factual Background

Filbrun was born in 1977 and at the time of his alleged disability onset date, he was thirty-two years old. He was thirty-eight years old at the time of the ALJ's decision.  He completed his high school education and has taken some college classes.  Prior to the onset of his disability, Filbrun performed various jobs including, retail sales clerk, customer service manager, cashier, and packing and shipping clerk.

Filbrun's medical records indicate that he had a brain tumor during his youth, so he received radiation treatment, which resulted in remission of the tumor (Filing No. 12-7 at 4–5, 13, 39–46).  In the fall of 2009, Filbrun was diagnosed with papillary thyroid carcinoma, which had not metastasized.  He underwent total thyroidectomy and subsequent whole body imaging, which revealed no abnormal extra thyroid uptake following the surgery to remove his thyroid.  Filbrun was prescribed medications following his thyroidectomy.  *Id.*; *id.* at 23.

In November 2011, Filbrun presented to Saint John's Digestive Disease Center with complaints of swallowing difficultly and discomfort as well as gastroesophageal reflux disease. He underwent a GI endoscopy to determine the cause of his dysphagia. Filbrun's GI endoscopy revealed hiatus hernia, Barrett's esophagus, Barrett's ulcer, and gastric polyps. Filbrun was prescribed Omeprazole to treat his symptoms, and he was counseled regarding an anti-reflux diet (Filing No. 12-8 at 55–56).

On October 23, 2012, Filbrun underwent a consultative mental status examination with Brandon Robbins, Psy.D. HSPP. ("Dr. Robbins"), as part of his previously-rejected disability application. Filbrun reported to Dr. Robbins that he was seeking disability benefits because of his reoccurring cancer, thyroid cancer, chest pain and burning sensations, short term memory problems, and depression. Filbrun complained that he had had problems with short term memory for many years because of his brain tumor and treatment. He also reported that he had struggled with depression for many years but that he had not sought counseling or been hospitalized for psychiatric reasons. Dr. Robbins diagnosed Filbrun with major depressive disorder of moderate severity with a global assessment of functioning ("GAF") score of 58 (Filing No. 12-8 at 67–69).

Dr. Robbins opined that Filbrun "did not present with psychological impairments related to understanding or memory . . . that would impact his ability to obtain or maintain employment in a variety of settings" based on Dr. Robbins' observation that Filbrun's "[l]ong term memory appear[ed] intact" and his "[p]rocessing speed was within limits." *Id.* at 69. Dr. Robbins also noted that Filbrun's "[a]ttention and concentration were both sufficient for employment. He presented with adequate social skills and appears capable of interacting with coworkers and supervisors." *Id.* Dr. Robbins opined, "[p]ersistence appears to be impacted by fatigue." *Id.*

On December 4, 2013, Filbrun underwent a second mental status examination with Dr. Robbins as part of his current disability applications. Filbrun reported to Dr. Robbins that he was seeking disability benefits because of his reoccurring cancer, thyroid cancer, and short term memory problems. He again reported a history of depression but denied seeking counseling or hospitalization. Dr. Robbins again diagnosed Filbrun with major depressive disorder of moderate severity with a GAF score of 55 (Filing No. 12-8 at 73–75). Dr. Robbins concluded that Filbrun "did not present with psychological impairments related to understanding that would impact his ability to obtain or maintain employment." *Id.* at 75. Dr. Robbins opined that Filbrun's ability to concentrate and his memory skills were fair, so he would likely benefit from repetitive occupational tasks. He also opined that Filbrun's level of persistence would be impacted by fatigue, so he would benefit from low-energy job tasks. *Id.*

In December 2013, William A. Shipley, Ph.D., a non-examining state-agency psychologist, opined that Filbrun did not have a "severe" mental impairment (Filing No. 12-3 at 18–19). In April 2014, Joelle J. Larsen, Ph.D., another non-examining state-agency psychologist, also opined that Filbrun did not have a "severe" mental impairment. *Id.* at 31–33.

On December 22, 2013, Filbrun sought emergency treatment for an acute confusional migraine. He reported a history of migraines, headaches, confusion, and associated visual difficulty. He underwent an MRI and CT scan, which did not reveal any acute findings. Filbrun's TSH level was abnormal at 50, and his wife reported that he had hypothyroidism and had not been taking his medication. Filbrun told the health care providers that he was unable to afford his medication. He was restarted on his thyroid medication and also given medication to help with his migraines and then discharged the next day (Filing No. 12-9 at 5–10).

In February 2014, Filbrun presented to family physician Chad Lamb, M.D. ("Dr. Lamb"), as a follow-up to his hospital visit. Filbrun reported that he continued to have daily headaches since his hospital discharge, and he was taking Tylenol to help with the headaches. Dr. Lamb directed Filbrun to discontinue his daily use of Tylenol, continue using Verapamil, and increase his thyroid medication (Filing No. 12-9 at 44–45).

In February 2015, Filbrun suffered a cerebrovascular accident (stroke) and presented to the emergency room where he was admitted to the hospital (Filing No. 12-10 at 40). His symptoms resolved over a three-day period, but following the incident, he did not feel as sharp and his hearing was worse. Filbrun returned to Dr. Lamb in June 2015 as a follow-up to his hospitalization. On examination, Filbrun showed good insight and judgment, normal mood, and no abnormalities. His mental status examination was normal. Dr. Lamb adjusted medications and referred Filbrun to a neurologist. *Id.* at 39–42. During another doctor's appointment at the end of June 2015, Filbrun reported symptoms of depression and anxiety; however, the mental status examination revealed normal results. *Id.* at 2–3.

Filbrun saw a neurologist in July 2015. He reported his stroke, ongoing headaches, and difficulty with memory and concentration, but he also reported that he was doing well overall following the stroke. On examination, Filbrun appeared fully oriented, showed no recurring cranial nerve impairments, had proper sensation, and had normal muscle functioning. He was referred for occupational, speech, and physical therapy (Filing No. 12-10 at 45–53).

On August 26, 2015, the same day as the hearing before the ALJ, Dr. Lamb provided a medical source statement, opining that Filbrun was seriously limited or unable to meet competitive standards in a number of areas concerning mental abilities and aptitudes. Dr. Lamb opined that

Filbrun would be off task 15% of the time and would likely miss one day of work each month ([Filing No. 12-10 at 77](#)–80).

## II.     DISABILITY AND STANDARD OF REVIEW

Under the Act, a claimant may be entitled to DIB or SSI only after he establishes that he is disabled.  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience.  42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled.  At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors.  20 C.F.R. § 416.920(a)(4)(i).  At step two, if the claimant does not have a "severe" impairment that meets the durational requirement, he is not disabled.  20 C.F.R. § 416.920(a)(4)(ii).  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled.  20 C.F.R. § 416.920(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then his residual functional capacity will be assessed and used for the

fourth and fifth steps. Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work in the relevant economy, given his RFC and considering his age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if he can perform any other work in the relevant economy.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Section 405(g) of the Act gives the court "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because

of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III. <u>THE ALJ'S DECISION</u>

The ALJ first determined that Filbrun met the insured status requirement of the Act through March 31, 2013. The ALJ then began the five-step sequential evaluation process. At step one, the ALJ found that Filbrun had not engaged in substantial gainful activity since October 23, 2009, the alleged disability onset date. At step two, the ALJ found that Filbrun had the following severe impairments: residual effects of a brain tumor and radiation as a child, thyroid cancer status post total thyroidectomy with resulting hypothyroidism, a hiatal hernia, Barrett's esophagus, Barrett's ulcer, gastric polyps, gastroesophageal reflux disease, obesity, headaches, memory loss, and depression. At step three, the ALJ concluded that Filbrun did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ then determined that Filbrun had an RFC to perform a range of light work as follows:

> sitting six hours during an eight-hour workday; standing up to thirty minutes at one time, with standing and walking six hours during an eight-hour workday; lifting, carrying, pushing and pulling twenty pounds occasionally and ten pounds frequently; occasionally climbing ramps and stairs, balancing, stooping, kneeling,

crouching and crawling; no climbing ladders, ropes or scaffolds; no work around dangerous moving machinery or at unprotected heights; no work in direct sunlight; no more than a moderate noise level as defined in the *Selected Characteristics of Occupations*; simple routine tasks with the ability to attend, concentrate and persist for two hours at a time; and no work in areas where there are more than twenty people in a group.

([Filing No. 12-2 at 26](#).)

At step four, the ALJ determined that Filbrun was unable to perform his past relevant work as a retail sales clerk, customer service manager, cashier, or packing and shipping clerk because the demands of this past work exceeded his RFC. At step five, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Filbrun could perform such as an information clerk, inside sales agent, or general clerk. Having determined that Filbrun could perform work in other jobs in the economy, the ALJ determined that Filbrun was not disabled. Therefore, the ALJ denied Filbrun's applications for DIB and SSI because he was found to be not disabled.

## IV. DISCUSSION

In his request for judicial review, Filbrun asserts two arguments for remanding this case to the ALJ for further consideration. First, Filbrun argues that the ALJ's RFC assessment and his corresponding hypothetical questions to the VE failed to account for Filbrun's moderate limitations in concentration, persistence, and pace as required by *O'Connor-Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2010). Second, Filbrun argues that the ALJ did not comply with requirements of SSR 00-4p at step five of the sequential evaluation process by failing to resolve a conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT").

### A. Assessment of Filbrun's Limitations in Concentration, Persistence, and Pace

Filbrun argues that the ALJ erred by not accounting for his moderate limitations in concentration, persistence, and pace when determining his RFC and when presenting hypothetical

questions to the VE at step five of the sequential evaluation process. He asserts that substantial evidence does not support the ALJ's decision because the ALJ failed to comply with the requirements of *O'Connor-Spinner*, which includes accounting for impairments in concentration, persistence, and pace. The ALJ must orient the VE to the totality of a claimant's limitations, and the Seventh Circuit has explained that "the most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical." *O'Connor-Spinner*, 627 F.3d at 619.

Filbrun points out that the ALJ found he had moderate difficulties with concentration, persistence, and pace; however, Filbrun argues, the ALJ did not account for those moderate difficulties in the RFC and corresponding hypothetical questions to the VE. Instead, the ALJ found that Filbrun was able to perform "simple routine tasks with the ability to attend, concentrate and persist for two hours at a time." (Filing No. 12-2 at 26.)

Filbrun acknowledges that there are two exceptions to the general rule of including the limitations in the RFC and hypothetical questions. First, the VE's familiarity with the limitations can be presumed, "despite any gaps in the hypothetical, when the record shows that the VE independently reviewed the medical record or heard testimony directly addressing those limitations." *O'Connor-Spinner*, 627 F.3d at 619. Second, an ALJ's hypothetical will be sufficient even when omitting the terms "concentration, persistence, and pace" if it is "manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *Id.* Filbrun asserts that neither exception applies in this case because there are no facts or evidence suggesting that the ALJ or the VE accounted for limitations in concentration, persistence, or pace.

The ALJ, Filbrun argues, essentially assumed no limitations with concentration, persistence, and pace regarding the mental demands of simple, routine, unskilled work because he was found to have the ability to attend, concentrate, and persist for two hours at a time. When a claimant can concentrate, persist, and maintain a pace for two hours doing simple, routine, unskilled work, the claimant has no limitation in his ability to perform that work because the regular interval between breaks is two hours. Filbrun points the Court to SSR 96-9p and the Program Operations Manual System ("POMS"), §§ DI 25020.010(B)(2), (B)(3), in support of this argument.

Filbrun concludes that this case must be remanded for further consideration because the ALJ failed to account for his moderate difficulties with concentration, persistence, and pace when determining the RFC and presenting hypothetical questions to the VE whose responses the ALJ later relied upon.

The Commissioner responds that the ALJ appropriately assessed moderate limitations in Filbrun's concentration, persistence, and pace, and then fully accounted for these limitations by limiting Filbrun to work in areas with no more than twenty people in a group and to simple routine tasks with an ability to attend, concentrate, and persist for two-hour periods at a time. Thus, the Commissioner argues, the ALJ's RFC consideration and the corresponding hypothetical questions directed to the VE satisfied the requirements of *O'Connor-Spinner* because they explicitly included the limitations in concentration, persistence, and pace. The Commissioner explains that the ALJ's determination of moderate limitations, rather than more severe limitations, was supported by substantial evidence from the medical evidence in the record (*e.g.*, the opinions of the state-agency psychologists and the consultative psychologist).

The Commissioner acknowledges that employing terms such as "'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace." *O'Connor-Spinner*, 627 F.3d at 620. However, there is no "per se requirement that this specific terminology ('concentration, persistence, and pace') be used in the hypothetical in all cases." *Id.* at 619. In any event, the Commissioner reasserts, the ALJ did explicitly ask the VE a hypothetical question involving deficiencies in concentration, persistence, and pace, and he included the limitation in his RFC finding.

The Commissioner also responds to Filbrun's argument that an ability to attend, concentrate, and persist for two hours at a time is essentially no limitation at all. The Commissioner asserts that a limitation to performing simple, routine tasks for two-hour periods is not incompatible with moderate limitations in concentration, persistence or pace. In support of this assertion, the Commissioner points to *Phares v. Berryhill*, 2017 U.S. Dist. LEXIS 44121, at *19–23 (S.D. Ind. Mar. 27, 2017) (finding limitation to "simple routine tasks with the ability to attend, concentrate, and persist for two hours at a time" to properly accommodate moderate limitations in concentration, persistence, and pace), and *Soga v. Colvin*, 2016 U.S. Dist. LEXIS 133182 (N.D. Ind. Sep. 28, 2016) (limitation to sustaining attention and concentration for two-hour periods at a time consistent with moderate deficiencies in concentration, persistence, and pace).

A review of the ALJ's decision and the transcript of the administrative hearing makes it readily apparent that the ALJ took into consideration Filbrun's limitations in concentration, persistence, and pace when making the RFC determination, and these limitations were directly

presented to and considered by the VE when answering the hypothetical questions that supported the ALJ's step five determination.

The ALJ's written decision explained, "After careful consideration of the entire record, I find the claimant has the residual functional capacity to perform . . . simple routine tasks with *the ability to attend, concentrate and persist for two hours at a time* . . . ." ([Filing No. 12-2 at 26](#)) (emphasis added). The decision also factored into the RFC additional limitations to working in areas with no more than twenty people and no more than a moderate noise level. *Id.*

During the administrative hearing, the ALJ asked the VE a hypothetical question involving deficiencies of concentration, persistence, and pace that directly correlated to the RFC determination. He asked:

> If in addition, this hypothetical cannot have – cannot work in an environment with more than a moderate noise level, as that term is defined in the SCO, and was limited to simple, routine tasks, but could *attend, concentrate, and persist for two hours at a time*, are there jobs in the state or the national economy that individual could perform?

([Filing No. 12-2 at 65](#)) (emphasis added). The VE responded, "Your honor, the jobs I previously identified could meet that hypothetical." *Id.*

It is clear that the ALJ considered Filbrun's limitations in concentration, persistence, and pace when determining his RFC. It also is clear that the VE was presented a hypothetical question involving limitations in concentration, persistence, and pace that matched the RFC finding. Based on that hypothetical question, the VE opined that there were jobs available that Filbrun could perform. The ALJ then permissibly relied on the VE's opinion as substantial evidence to support his finding that Filbrun was not disabled.

Filbrun relies on SSR 96-9p and POMS §§ DI 25020.010(B)(2), (B)(3) to argue that a finding of an ability to attend, concentrate, and persist for two hours at a time is essentially no

limitation at all, rather than a moderate limitation to concentration, persistence, and pace. The Court notes that SSR 96-9p's guidance regarding two-hour work intervals comes in the context of exertional limitations to sitting for certain periods of time, not to concentration, persistence, and pace. The POMS sections suggest that an ability to maintain concentration and attention for two-hour segments is necessary for any job; however, the Court notes that this does not necessarily mean that a limitation to two-hour intervals of work cannot account for moderate limitations in concentration, persistence, and pace. The Court further notes that the POMS has no legal force and cannot bind the Social Security Administration or a reviewing district court. *See Schweiker v. Hansen*, 450 U.S. 785, 789–90 (1981); *Pulley v. Bowen*, 817 F.2d 453, 454 (7th Cir. 1987); *Khuzaie v. Comm'r of Soc. Sec.*, 2016 U.S. Dist. LEXIS 42958, at *28–29 (N.D. Ind. Mar. 30, 2016). The Court is unaware of any hard-and-fast rule that demands a cap at a set number of hours of work to equate to a moderate limitation in concentration, persistence, and pace.

The written decision of the ALJ makes clear that he considered the evidence in the record and determined that Filbrun had moderate limitations in his concentration, persistence, and pace. The ALJ then determined that Filbrun's moderate limitations in concentration, persistence, and pace necessitated work areas of no more than twenty people, no more than a moderate noise level, and importantly, simple routine tasks with the ability to attend, concentrate, and persist for two hours at a time. The ALJ's decision was supported by substantial evidence in the form of the medical evidence and the testimony of the VE. The Court does not reweigh the evidence or substitute its own judgment for that of the ALJ when the ALJ's decision is supported by substantial evidence. *Overman*, 546 F.3d at 462; *Dixon*, 270 F.3d at 1176. Therefore, the Court concludes that Filbrun's argument regarding his moderate limitations in concentration, persistence, and pace do not warrant reversal and remand in this case.

**B.**     **SSR 00-4p's Requirements at Step Five of the Sequential Evaluation Process**

Next, Filbrun asserts:

> <u>If</u> the Court agrees with Mr. Filbrun that his claims should be readjudicated given the ALJ's violation of <u>O'Connor-Spinner I</u>, the Court should also order the Commissioner on remand to correct the ALJ's SSR 00-4p errors. The ALJ's SSR 00-4p errors, standing alone, do not warrant granting Mr. Filbrun relief.

(Filing No. 14 at 11) (emphasis in original).  In light of the Court's decision above and Filbrun's acknowledgment that the alleged SSR 00-4p errors, standing alone, do not warrant granting Filbrun relief, the Court will only briefly address this second issue.

Filbrun explains that SSR 00-4p requires the ALJ to ask the VE whether his testimony conflicts with the DOT.  If there is a conflict, the ALJ must obtain a reasonable explanation for the conflict.  Additionally, the ALJ must address any conflict between the VE's testimony and the DOT in the ALJ's written decision.  Filbrun argues that the ALJ failed to recognize, reconcile, and address a conflict between the VE's testimony and the DOT concerning the "semi-skilled" level of work of an "information clerk."

The Commissioner responds that this harmless error is the result of a scrivener's error when listing the DOT code for an "appointment clerk" rather than an "information clerk".  The proper DOT code for an "information clerk" corresponds to the position that is an "unskilled" job.  The Commissioner also points out that Filbrun and his attorney had no questions for the VE during the administrative hearing, and they should have raised any issues of misidentified job listings during the hearing.  The Commissioner also explains that any alleged error is harmless because the VE additionally identified two other jobs that Filbrun could have performed given his RFC.

The arguments presented by the Commissioner are well-taken and accepted by the Court. The Court also again notes that Filbrun acknowledged the alleged SSR 00-4p errors, standing

alone, do not warrant granting Filbrun relief. For these reasons, the Court determines that Filbrun's second argument does not warrant reversal and remand.

## V.    CONCLUSION

For the reasons set forth above, the final decision of the Commissioner is **AFFIRMED**. Filbrun's appeal is **DISMISSED**.

**SO ORDERED.**

Date:  3/29/2018

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

J. Frank Hanley, II
LAW OFFICES OF J. FRANK HANLEY II, INC.
jfrankhanley@jfrankhanley.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov